**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

---

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

Plaintiffs,

v.

JARED DEMARINIS, in his official capacity as
State Administrator of Elections, *et al.*,

Defendants.

Civil Action No. SAG-25-3989

---

**MEMORANDUM IN SUPPORT OF DEMOCRATIC**
**NATIONAL COMMITTEE'S MOTION TO INTERVENE**

**INTRODUCTION**

Where the Republican National Committee ("RNC") seeks political advantage by
demanding aggressive registration list maintenance likely to disenfranchise eligible voters, the
Democratic National Committee ("DNC") may intervene in defense of its campaigns and its
members. Here, the RNC has sued Maryland state and local officials, and the DNC moves to
intervene before any defendant has filed a responsive pleading. The DNC has clear interests in
this litigation that would be impaired if the RNC is successful, and governmental defendants do
not adequately represent the political and personal interests of the DNC and its members.
Therefore, the DNC is entitled to intervention of right. Should this Court conclude otherwise,
this Court should ensure a balanced and complete presentation of the issues by granting
permissive intervention.

## BACKGROUND

### I.    Voter Registration List Maintenance in Maryland

The Maryland Election Law establishes a comprehensive voter registration regime, including voter registration list maintenance requirements. *See* Md. Code Ann., Elec. Law ("EL") §§ 3-101 to -602; *see also* Md. Code Regs. ("COMAR") 33.05.01.00–.07.9999. Relevant here, Maryland law and regulations require a general program to remove the names of ineligible voters from the official list of eligible voters by reason of the death of the registrant or a change in the residence of the registrant. *See* EL §§ 3-501 to -504; COMAR 33.05.06.01–.07.05. Based on these procedures, Maryland reported removing 264,617 registered voters from the rolls between the 2022 and 2024 federal general elections, including 88,132 deceased registrants and 168,181 registrants based on a change in residence. *See* Election Assistance Comm'n, *Election Administration and Voting Survey: 2024 Comprehensive Report* 185 (2025), https://perma.cc/TZJ5-S5FW. Maryland had 4,231,112 active registered voters on election day 2024, including 16- and 17-year-olds. *Id.* at 157; *see also* EL § 3-102(a)(1)(ii) (16-year-old age qualification for registration); *id.* § 3-102(a)(2) (18-year-old general age qualification to vote). Maryland had approximately 4,471,000 citizens aged 18 and over ("CVAP") in 2024. *See* U.S. Census Bureau, *ACS 1-Year Estimates Detailed Tables, tbl. B05003 (Maryland)*, https://perma.cc/U3JD-9QVH.

### II.    The Democratic National Committee

The DNC is the oldest continuing party committee in the United States. Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates. The DNC represents millions

of voters across the country, including over 2.2 million active registered Democrats in the State of Maryland. *See* Md. Elections, *November 2025 Monthly Statistics Report*, https://perma.cc/784G-4S88. Democratic candidates have achieved historic success in recent Maryland elections, sweeping statewide offices and nearly all federal elections.

The DNC supports reasonable state efforts "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). However, overly aggressive list maintenance may lead to errors that remove registrants who still meet state eligibility criteria. This would force the DNC to expend and divert funds and resources that it would otherwise spend on voter outreach and mobilization efforts toward informing voters about their registration status and urging them to reregister, frustrating the DNC's mission of electing Democratic candidates at the national, state, and local levels. *See* Ex. 1, Decl. of Liberty Schneider ("Schneider Decl.") ¶¶ 4, 9–10, 12. Moreover, members of the Democratic Party erroneously flagged as ineligible will be harmed by loss of voter registration status, particularly if they are removed from the rolls after the close of registration for an upcoming election. *See, e.g.*, *Tex. Democratic Pty. v. Benkiser*, 459 F.3d 582, 587–88 (5th Cir. 2006) (recognizing political party associational standing). Ultimately, erroneous or unnecessary purges based on suspected changes of residence within the State would harm Democratic campaigns, as Democratic voters are more frequent movers than Republicans. *See* Schneider Decl. ¶ 7; *see also, e.g.*, Russell Weaver, *Analyzing the Turnout Gap Between Tenants and Homeowners in the 2022 New York State General Election*, 4 High Road Policy 1, 6–7 (2024), https://perma.cc/S8MC-DGDQ.

### III.    The Republican National Committee's Lawsuit

Last summer, the Republican National Committee, the Maryland Republican Party, and affiliated individuals (collectively, "RNC") sent a letter to Jared DeMarinis, the Maryland State

Administrator of Elections, providing written notice of a purported National Voter Registration Act ("NVRA") violation. *See* Letter from Rep. Nat'l Comm., et al. to Jared DeMarinis, Md. State Admin. of Elections (July 18, 2025) ("July 18 Ltr."), ECF No. 1-2. On December 5, 2025, the RNC filed suit against Administrator DeMarinis and other state and local officials, alleging a violation of the affirmative voter registration list maintenance requirements in Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4). Compl., ECF No 1. The general allegations rest on apples-to-oranges-to-bananas comparisons of 2023 CVAP data, 2024 active voter registration figures (including 16- and 17-year-olds), and survey data concerning political participation. *Id.* ¶¶ 85–97; *see also* July 18 Ltr. 5–6. The RNC specifically alleges that Maryland falls short of its obligations by updating the voter registration records of intercounty movers within the State, rather than placing those voters on the path to removal from the rolls, and declining to use mail returned as undeliverable as a proxy for a change of address. Compl. ¶¶ 104–06, 109–11; *cf.* COMAR § 33.05.05.03(B)(2) (relying on undeliverable notice to preclude initial registration). Allegations of inadequate removal of deceased registrants rest on a 2023 audit and a recent prohibition on list maintenance using Ancestry.com. Compl. ¶¶ 114–21; *see also* Md. State Bd. of Elections, *SBE Policy 2025-02: Obituary Policy*, https://perma.cc/FUT2-SZRB. *But see* Office of Legis. Audits, *Audit Report: State Board of Elections* app. B (2023), ECF No. 1-1 (outlining subsequent changes). The RNC seeks an order requiring that Defendants "ensure that ineligible registrants are not on the voter rolls," Compl., Prayer for Relief ¶ C, a demand far exceeding the statutory requirement to make a "reasonable effort" to remove deceased registrants and those ineligible based on change of address, 52 U.S.C. § 20507(a)(4).

The RNC served Defendants on December 23, 2025. *See* Mot. for Extension, ECF No. 15. On December 29, 2025, this Court extended Defendants' deadline to file a response to Defendants' Complaint to January 30, 2026. *See* Order (Dec. 29, 2025), ECF No. 16.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) directs that on "timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Rule 24(b)(1)(B) separately establishes that on "timely motion, the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

### I.    The DNC Is Entitled to Intervention of Right.

The DNC meets all requirements for intervention of right. Rule 24(a) may be broken down into four distinct prerequisites. "[T]imeliness is a cardinal consideration." *Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (internal citation and quotation marks omitted). If the motion is timely, "a district court must permit intervention as a matter of right if the movant can demonstrate (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Stuart v. Huff*, 706 F.3d 345, 349

(4th Cir. 2013) (internal citation and quotation marks omitted); *see also Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179, 190 (2022) (similar division). All necessary factors are present here.

The DNC has sought timely intervention by moving before Defendants have responded to the Complaint. *See, e.g.*, *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely."); *see also, e.g.*, *Makhteshim Agan of N. Am., Inc. v. Nat'l Marine Fisheries Serv.*, No. 8:18-cv-961, 2018 WL 5846816, at *3 n.3 (D. Md. Nov. 8, 2018) (deeming motion filed seven weeks after complaint to be timely); *cf. NAACP v. New York*, 413 U.S. 345, 366–69 (1973) (rejecting motion filed after plaintiff moved for summary judgment). "In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). Here, the suit has not progressed, intervention will not prejudice the existing parties, and the DNC was not tardy in filing its Motion. The instant Motion is timely. *See, e.g.*, *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (recognizing that timeliness comes into play "to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal" (internal citation and quotation marks omitted)).

The DNC also has a clear interest in the subject matter of this action: maintenance of the Maryland voter file. Fundamentally, the DNC has an interest in protecting registered Democrats' constitutional and statutory voting rights, including the right to remain on the voter rolls once registered. *See* 52 U.S.C. § 20507(a)(3), (b)(2); *see also, e.g.*, *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Moreover, the DNC has already spent and will continue to spend significant resources registering eligible citizens to vote across the country, including students and other frequent movers. Schneider Decl. ¶¶ 6–7. Finally, the DNC has an interest in running successful campaigns to elect Democratic candidates to public office in Maryland. *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365, at *4 (D. Nev. Apr. 28, 2020) (granting DNC intervention); *cf. La Unión del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (reversing denial of RNC intervention); *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) (granting unions intervention in voter registration list maintenance case).[1]  The DNC has much "to gain or lose by the direct legal operation" of this Court's judgment, satisfying the protectible interest requirement. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).

In turn, a victory for the RNC in this litigation may impair the DNC's interests in protecting Democratic voters, DNC registration efforts, and Democratic campaigns from overly aggressive list maintenance. *See* Fed. R. Civ. P. 24(a)(2) (requiring only that movant's interests "may as a practical matter" be impaired). Any procedure to "*ensure* that ineligible registrants are not on the voter rolls," Compl., Prayer for Relief ¶ C (emphasis added), would risk the removal of misidentified eligible voters. *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (describing registrants erroneously flagged as ineligible); *see also* 52 U.S.C.

---

[1] *See also, e.g.*, Order, *Donald J. Trump for President v. Bullock*, No. 6:20-cv-66 (D. Mont. Sept. 8, 2020), ECF No. 35 (granting Democratic entities intervention in suit brought by Republican entities); *Donald J. Trump for President, Inc. v. Murphy*, No. 3:20-cv-10753, 2020 WL 5229209, at *1 (D.N.J. Sept. 1, 2020) (granting Democratic entity intervention in suit by a Republican candidate and party entities by a Republican candidate and party entities); Minute Entry, *Cook Cnty. Republican Party v. Pritzker*, No. 20-cv-4676 (N.D. Ill. Aug. 28, 2020), ECF No. 37 (granting Democratic entity intervention in suit by a Republican entity); *Issa v. Newsom*, No. 2:20-cv-1044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting Democratic entities intervention in suit by a Republican candidate).

§ 20507(d)(1)(B) (statutory protections for suspected movers). Most notably, acceptance of the RNC's novel and unsupported theory that the NVRA *requires* States to place intercounty movers on the path to removal from the registration rolls, Compl. ¶¶ 104–07, would threaten the registration status of Democratic-leaning voters across the country. This threat to the DNC's interests far exceeds the "minimal" requirements for intervention of right. *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (internal quotation marks and citation omitted).

Finally, Defendants do not adequately represent the DNC's interest in this litigation. Defendants are public officeholders focused on the administration of elections, whereas the DNC has particularized interests in Democratic voters, registration efforts, and campaigns. *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). Defendants may consent to relief that undermines protections for eligible voters, particularly to bring an end to costly litigation and preserve limited government resources. *See Judicial Watch*, 2024 WL 3454706, at *5. Thus, the DNC would "add [a] missing element" to this litigation. *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). Where a government defendant and a proposed intervenor have "related" but not "identical" interests, there is no presumption of adequate representation, and the proposed intervenor's burden "should be treated as minimal." *Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179, 196 (2022); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (noting that proposed intervenors need not show that representation of their interests *will* be inadequate, only that "representation [of their interests] *may* be inadequate" (emphasis added)). That minimal burden is met in this case. *See, e.g.*, *Berger*, 597 U.S. at 198 (reversing denial of intervention where government defendant was "represented by an attorney general who, though no doubt a vigorous advocate for his clients'

interests, is also an elected official who may feel allegiance to the voting public or share

[defendant's] administrative concerns). Therefore, this Court should grant intervention of right.

## II.    In the Alternative, the DNC Should Be Granted Permissive Intervention.

Should this Court decline to grant intervention of right, it should grant the DNC

permissive intervention. Permissive intervention requires only that this Court deem the instant

Motion timely and recognize that the DNC will present "a . . . defense that shares with the main

action a common question of law or fact." *Stuart*, 706 F.3d at 355 (quoting Fed. R. Civ. P.

24(b)(1)(B)). "[L]iberal intervention is desirable to dispose of as much of a controversy

involving as many apparently concerned persons as is compatible with efficiency and due

process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986). For the reasons already addressed

above, the DNC's request to intervene in this action is timely. *See* Section IV.A, *supra*; *see also*

*Alt*, 758 F.3d at 591 (recognizing "timely motion" requirement applies under both Rule 24(a) and

Rule 24(b)). At this stage, intervention cannot "unduly delay or prejudice the adjudication of the

rights of the original parties." Fed. R. Civ. P. 24(b)(3).

The DNC's defense goes to the heart of this litigation: whether the RNC may force

Maryland officials to engage in aggressive voter registration list maintenance, including placing

intercounty movers on the path to removal from the rolls. Thus, the DNC will argue that

- The NVRA requires only "a reasonable effort to remove the names of ineligible voters"
  and only based on "the death of the registrant" or "a change in the residence of the
  registrant," 52 U.S.C. § 20507(a)(4);

- A hodgepodge of administrative records and survey responses (misaligned over time) do
  not support a plausible claim under Section 8(a)(4) of the NVRA, *see Bellitto v. Snipes*,
  935 F.3d 1192, 1207–09 (11th Cir. 2019); *RNC v. Benson*, 754 F. Supp. 3d 773, 791–93

(W.D. Mich. 2024), *aff'd*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025) (per curiam);

- The statutory safe-harbor is only one way for states to "meet the [reasonable effort] requirement" with respect to movers, 52 U.S.C. § 20507(c)(1), and the logic of the safe-harbor—in combination with later-enacted statewide database requirements, *see id.* § 21083—renders Maryland's intercounty mover procedures reasonable as a matter of law; and

- Maryland no longer applies hard-match requirements for suspected deceased registrants, yet any such requirement would be a reasonable exercise of state discretion, *see, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 627–28 (6th Cir. 2025), *petition for cert. pending*, No. 25-437 (filed Oct. 7, 2025); *Bellitto*, 935 F.3d at 1207;

These defenses do not add issues to this case; they provide paths to dispose of the RNC's claims.

There are additional strong reasons to allow the DNC to intervene here. Courts may consider factors such as "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case." *Brown Inv. Advisory & Tr. Co. v. Allen*, No. 1:19-cv-2332, 2020 WL 5798365, at *3 (D. Md. Sept. 29, 2020) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1229 (9th Cir. 1977)). The DNC provides the unique perspective of a party engaged in litigation and voter protection efforts nationwide, a political entity that both registers voters and uses voter registration rolls to engage supporters, and a membership organization ensuring that Democrats are able to cast ballots that will be counted  *See* Schneider Decl. ¶¶ 5–6, 8–9, 11; *see also, e.g.*, *Trump v. Wis. Election Comm'n*, No. 1:20-cv-1785, 2020 WL 7230960, at *3 (E.D. Wis. Dec. 8, 2020) (recognizing DNC's "key perspectives" and ability to "complete the

development of issues before the Court"); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-2078, 2020 WL 8262029, at *1–2 (M.D. Pa. Nov. 12, 2020) (granting permissive intervention to DNC); *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (granting permissive intervention to state political party). The legal positions that the DNC intends to advance illustrate the critical role that the DNC would play in this litigation. *See Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–802 (E.D. Mich. 2020) (allowing permissive intervention to balance presentation in voter registration list maintenance challenge). Therefore, should this Court decline to grant the DNC intervention of right, the Court should exercise its discretion to allow permissive intervention.

## CONCLUSION

For the reasons set forth above, this Court should grant the DNC intervention of right or, in the alternative, permissive intervention.

Dated: January 12, 2026                    Respectfully submitted,


/s/ Monica R. Basche                       /s/ Daniel J. Freeman
Andrew D. Levy (Fed. Bar No. 00861)        Daniel J. Freeman*
Monica R. Basche (Fed. Bar No. 20476)      Democratic National Committee
Brown Goldstein & Levy, LLP                430 South Capitol Street SE
120 East Baltimore Street, Suite 2500      Washington, DC 20003
Baltimore, MD 21202                        Phone: 202-863-8000
Phone: 410-962-1030                        Fax: 202-863-8063
Fax: 410-385-0869                          freemand@dnc.org
adl@browngold.com
mbasche@browngold.com


                                           *Counsel for Proposed Defendant-Intervenor*
                                           *Democratic National Committee*

                                           * *Application for admission pro hac vice*
                                             *forthcoming*

11