IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| REPUBLICAN NATIONAL COMMITTEE *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: SAG-25-3989 |
| JARED DEMARINIS, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF DEFENDANT DAVID NAIMON, DANIEL KOROMA, AMORETTA HOEBER, KEYNA ANYIAM, ALEXANDER VINCENT, MARGIE DELAO, AND LAWRENCE HALLORAN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants DAVID NAIMON, DANIEL KOROMA, AMORETTA HOEBER, KEYNA ANYIAM, ALEXANDER VINCENT, MARGIE DELAO, and LAWRENCE HALLORAN (collectively "the Montgomery County Board of Elections" or "the members of the Montgomery County Board of Elections"), by KARPINSKI, CORNBROOKS & KARP, P.A., KEVIN KARPINSKI and JOHN KARPINSKI, their attorneys, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss and state:

# **TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... ii

Table of Authorities ...................................................................................................................... iii

Introduction and Procedural History .............................................................................................. 1

Allegations in the Complaint ......................................................................................................... 2

Standard of Review ........................................................................................................................ 3

Argument ....................................................................................................................................... 4

    A.   The NVRA and States' Obligation to Make Reasonable Effort to Remove the Names of Ineligible Voters. ..................................................................................................................... 4

    B.   The State of Maryland Makes Reasonable Efforts to Remove Ineligible Voters ............... 8

    C.   Plaintiffs Have Failed to Plausibly Plead That the Members of the Montgomery County Board of Elections Violated the NVRA. ..................................................................................11

Conclusion ................................................................................................................................... 13

Certificate of Service ................................................................................................................... 15

# **TABLE OF AUTHORITIES**

### **Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 3

*Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp.3d 574 (D.Md. 2019) .................. 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 3, 4

*Bellitto v. Snipes*, 935 F.3d 1192 (2019) .................................................................................. 5, 6, 8

*Bourgeois v. Live Nation Ent., Inc.*, 3 F.Supp.3d 423 (D. Md. 2014) ............................................ 4

*Johnson v. Zimmer*, 686 F.3d 224 (4th Cir. 2012) ........................................................................ 7

*Judicial Watch, Inc. v. Lamone*, 399 F.Supp.3d 425 (D.Md. 2019) ........................................... 8, 9

*King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) ........................................................................ 3

*Nat. Coalition for Students v. Allen*, 152 F.3d 283 (4th Cir. 1998) ............................................... 7

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ...................................... 4

*Public Interest Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025). ................................... 7, 8

*Reamer v. State Auto Mut. Ins. Co.*, 556 F.Supp.3d 544 (D.Md. 2021) ......................................... 2

*United States v. Lehman*, 225 F.3d 426 (4th Cir. 2000) ............................................................... 7

*Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.*, 214 F.Supp.3d 448 (D.Md. 2016) ............................................................................................................................. 3

*Watkins v. Brown*, 173 F.Supp.2d 409 (D.Md. 2001) .................................................................... 7

### **Statutes**

42 U.S.C. § 1973gg(aa), *as amended*, 52 U.S.C. § 20501(a) ........................................................ 4

52 U.S.C. § 20501(b)(1) ................................................................................................................. 5

52 U.S.C. § 20501(b)(2) ................................................................................................................. 5

52 U.S.C. § 20501(b)(3). ................................................................................................................ 5

52 U.S.C. § 20501(b)(4). ................................................................................................................ 5

52 U.S.C. § 20507(a)(3) .................................................................................................................. 6

52 U.S.C. § 20507(a)(4) ............................................................................................................... 1, 6

52 U.S.C. § 20507(c)(1) ................................................................................................................ 11

52 U.S.C. § 20507(c)(1)(A) ............................................................................................................ 6

52 U.S.C. § 20507(c)(1)(B)(i) ..................................................................................................... 6, 7

52 U.S.C. § 20507(d)(2)(A) ........................................................................................................ 6, 7

52 U.S.C. § 20509 .......................................................................................................................... 5

Md. Code, Elec. Law § 1-101(kk) ................................................................................................. 2

Md. Code, Elec. Law §§ 2-103(b)(7) ........................................................................................... 11

Md. Code, Elec. Law § 3-101(a) .................................................................................................... 8

Md. Code, Elec. Law § 3-101(b) .................................................................................................. 13

Md. Code, Elec. Law § 3-101(b)(1) ............................................................................................... 8

Md. Code, Elec. Law § 3-101(c)(1) ........................................................................................... 8,11

Md. Code, Elec. Law § 3-101(c)(2) ............................................................................................... 9

Md. Code, Elec. Law § 3-101(c)(3) ............................................................................................... 8

Md. Code, Elec. Law § 3-101(c)(3)(iii) .................................................................................. 11, 12

Md. Code, Elec. Law § 3-101(c)(4) ............................................................................................... 9

Md. Code, Elec. Law § 3-101(d) ................................................................................................... 9

Md. Code, Elec. Law § 3-101(f)(1) .............................................................................................. 10

Md. Code, Elec. Law § 3-501 ........................................................................................................ 9

Md. Code, Elec. Law § 3-502(b) .................................................................................................. 11

Md. Code, Elec. Law § 3-502(c) .................................................................................................. 11

Md. Code, Elec. Law § 3-502(e) .................................................................................................. 11

Md. Code, Elec. Law § 3-504(a) ............................................................................................... 10

Md. Code, Elec. Law § 3-504(b)(1) ..................................................................................... 9, 10

## Other Authorities

Reasonable, Black's Law Dictionary (12th ed. 2024) ................................................................ 7

Reasonable, Webster's Third New International Dictionary (1993) ............................................ 7

## INTRODUCTION AND PROCEDURAL HISTORY

This action is grounded in Section 8 of the National Voter Registration Act of 1993 ("NVRA"), which requires that States "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). The Republican National Committee, Maryland Republican Party, Reardon Sullivan, and Nicolee Ambrose (collectively "Plaintiffs") have brought suit against the State Administrator of Elections, the members of the Maryland State Board of Elections, the members of the Montgomery County Board of Elections, and the members of the Howard County Board of Elections. Plaintiffs allege that Defendants have violated the NVRA, as they allegedly have failed to make reasonable efforts to conduct appropriate list maintenance. ECF No. 1 at ¶ 7.

The members of the Montgomery County Board of Elections adopt and incorporate the arguments made by the State Administrator and the Maryland State Board of Elections as if fully set forth herein. ECF No. 25. They also separately move to raise additional arguments related to local boards of elections. For the reasons stated in the State Administrator and State Board's Motion and the reasons stated below, Plaintiffs have failed to plausibly state a claim against the members of the Montgomery County Board of Elections. As such, the claim against these Defendants must be dismissed with prejudice.

## ALLEGATIONS IN THE COMPLAINT

Plaintiffs in this action are the national and State controlling entities of a principal political party[1] and two Maryland registered voters who affiliate with that party.[2] ECF No. 1 at ¶¶10-44. Plaintiffs allege that voter registration rates in the State "are abnormally or—in the case of counties with greater than 100 percent registration—impossibly high." *Id.* at ¶ 90. They point to Howard County and Montgomery County and allege that these jurisdictions "record more active registered voters than voting-eligible citizens who live there." *Id.* at ¶ 88. They also allege that other counties, "including Queen Anne's, Charles, Carroll, Calvert, Dorchester, Harford, Prince George's, Talbot, and Worcester maintain suspiciously high rates of active voter registration above 90%." *Id.* at ¶ 89.

Plaintiffs attempt to attribute Maryland's registration rates to policies and programs developed and implemented by the State Administrator of Elections and the State Board of Elections. Plaintiffs plead the following alleged deficiencies in the State's voter removal programs:

- "Maryland's list maintenance doesn't distinguish between intra-county and inter-county movers." *Id.* at ¶ 104.

- "Around March of 2015, the State Board of Elections directed localities to stop conducting list maintenance using undeliverable mail returned by USPS that

---

[1] A "principal political party" in Maryland is a party whose candidate for Governor garnered the highest or second-highest number of votes in the past gubernatorial election. Md. Code, Elec. Law § 1-101(kk).

[2] For purposes of this Motion only, these Defendants accept as true the factual allegations in the Complaint. *See Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp.3d 574, 584 (D.Md. 2019) ("In reviewing a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and must draw all reasonable inferences from those facts in favor of the plaintiff."). These Defendants note, however, that the vast majority of the allegations in Plaintiffs' Complaint are legal conclusions, which this Court need not accept. *See Reamer v. State Auto Mut. Ins. Co.*, 556 F.Supp.3d 544 (D.Md. 2021) ("[A]lthough courts 'must view the facts alleged in the complaint in the light most favorable to the plaintiff,' they 'will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments' in deciding whether a case should survive a motion to dismiss." (citation omitted)).

      bears a yellow return label without identifying information such as the voter's name. These yellow labels, also known as 'NIXIES,' constitute a high percentage of mail returned to election officials." *Id.* at ¶ 109.

- "Defendants have not made reasonable efforts to remove deceased voters or maintain accurate death records. For example, the Board would not remove a potentially deceased voter's registration unless the death record perfectly matched the registration name in spelling and format." *Id.* at ¶¶ 114-15.

- "[T]he Board is aware that the information received from the Department of Health was not complete and did not include all individuals who died in Maryland." *Id.* at ¶ 116.

- "Defendants State Board of Elections members and DeMarinis have also recently enacted an official policy to make it more difficult for local election officials to remove deceased voters by restricting the types of source materials they can use to cancel registrations of deceased voters." *Id.* at ¶ 121.

Based on voter registration statistics and these allegedly deficient programs, Plaintiffs allege that "Defendants are failing to make a reasonable effort to conduct appropriate list maintenance as required by the NVRA." *Id.* at ¶ 7.

## STANDARD OF REVIEW

      The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial probability exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Factual allegations, in other words, "must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555. "An inference of a mere possibility of misconduct is not sufficient to raise a right to relief above the speculative level." *Voters Organized for the Integrity of Elections v. Balt. City Elections Bd.*, 214 F.Supp.3d 448, 450 (D.Md.

3


2016). Allegations that amount to "no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" are also "insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F.Supp.3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555)).

## **ARGUMENT**

As explained in more detail below, the Montgomery County Board of Elections is bound—as a matter of State law—to abide by the voter registration and removal programs established by the State Administrator and the State Board of Elections. To the extent that these programs are deficient, the State Administrator and the State Board of Elections are charged with curing the deficiencies. Accordingly, the claim against the members of the Montgomery County Board of Elections must be dismissed, as Plaintiffs have not—and cannot—plausibly plead that these Defendants violated Section 8 of the NVRA.

This argument section proceeds in three (3) parts. In part A, these Defendants outline the NVRA and the duties it imparts on states. In part B, these Defendants summarize the relevant Maryland law. Finally, in part C, these Defendants argue that, in Maryland, the voter registration and removal programs are developed by the State Administrator of Elections and the Maryland State Board of Elections and that Plaintiffs have not plausibly pleaded a claim against the members of the Montgomery County Board of Elections.

**A. The NVRA and States' Obligation to Make Reasonable Effort to Remove the Names of Ineligible Voters.**

The NVRA reflects the view of Congress that the "right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,' and that discriminatory and unfair registration laws can have a 'damaging effect on voter participation' and 'disproportionately harm voter participation by various groups, including racial minorities.'" *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (quoting 42 U.S.C. § 1973gg(aa), *as amended*,

4

52 U.S.C. § 20501(a)). The goal of the statute is to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and "to make it possible for Federal, State, and local governments to implement [the Act] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b)(1)-(2). Because Congress also recognized that easing registration barriers could threaten election integrity, it also set forth another set of goals: "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." *Id.* at § 20501(b)(3)-(4). The United States Court of Appeals for the Eleventh Circuit has summarized the tension created by these differing goals:

> These twin objectives—easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voting rolls—naturally create some tension. Undoubtably, a maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters. Conversely, preventing the states from removing registrants altogether would ensure that no eligible voters are removed, but, at the same time, maximize the risks associated with inaccurate voter rolls. Thus, Congress crafted a statute that sought to balance these competing interests.

*Bellitto v. Snipes*, 935 F.3d 1192, 1198 (2019).

The NVRA requires that each State "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. Section 8, which is at the heart of this case, provides:

> In the administration of voter registration for elections for Federal office, each State shall—
>
> .   .   .
>
> (3) provide that the name of a registrant may not be removed from the official list of eligible voters except—
>
>> (A) at the request of the registrant;
>>
>> (B) as provided by state law, by reason of criminal conviction or mental incapacity; or

5

(C) as provided under paragraph (4);

(4) **conduct a general program that makes a reasonable effort** to remove the names of ineligible voters from the official lists of eligible voters by reason of—

(A) the death of the registrant; or

(B) a change in residence of the registrant, in accordance with subsections (b), (c), and (d).

*Id.* at § 20507(a)(3)-(4) (emphasis added). The statute, therefore, "<u>permits</u> the states to remove registrants only under defined circumstances—at the request of the voter, by reason of criminal conviction or mental incapacity, as provided by state law, or because of death or change of residence but it also <u>requires</u> the states to conduct a general program that makes a reasonable effort to remove the names of voters who have become ineligible on account of death or change in address." *Bellitto*, 935 F.3d at 1199.

As it relates to voters who change addresses, the statute includes a "safe harbor" provision that satisfies the "reasonable effort" requirement. *Id.* at 1203 ("The National Voter Registration Act provides the states with a safe harbor for conducting a general program of list maintenance that makes a reasonable effort to remove voters who have become ineligible because of a change of address."). The provision provides that states make a "reasonable effort" by using "change-of-address information supplied by the Postal Service through its licensees . . . to identify registrants whose addresses may have changed." 52 U.S.C. § 20507(c)(1)(A). If the registrant has moved to a different residence address in the same jurisdiction, the registrar need only change "the registration records to show the new address and send[] the registrant a notice of the change by forwardable mail and a pre-addressed return form by which the registrant may verify or correct the address information." *Id.* at § 20507(c)(1)(B)(i). If a voter moves to another jurisdiction, the statutory program requires that the registrar send a postage prepaid and pre-addressed "return card"

6

"on which the registrant may state his or her current address" and with notice regarding the consequences of failing to return the card. *Id*. at § 20507 (c)(1)(B)(i) & (d)(2)(A).

Congress did not, however, "give any further guidance on what a 'reasonable effort' must look like." *Public Interest Legal Found. v. Benson*, 136 F.4th 613, 624 (6th Cir. 2025). It did not, for example, "enumerate what steps a state should take to come into compliance with" the reasonable effort "standard." *Id.* Accordingly, to ascertain the meaning of the statute, this Court must apply the rules of statutory construction.

"It is well-settled that the starting point for statutory interpretation is to examine the plain meaning of the words of the statute." *Watkins v. Brown*, 173 F.Supp.2d 409, 413 (D.Md. 2001). Words that "are not defined in the relevant statutory provisions are typically 'interpreted as taking their ordinary, contemporary, common meaning.'" *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (quoting *United States v. Lehman*, 225 F.3d 426, 428 (4th Cir. 2000)). Courts "customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Nat. Coalition for Students v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998).

As it relates to this case, the core question of statutory interpretation is: "what efforts must a state make in order to meet the NVRA's 'reasonable effort' requirement?" *Benson*, 136 F.4th at 624. Black's Law Dictionary defines "reasonable" as "[w]ithin sensible or rational limits; not excessive; moderate." Reasonable, Black's Law Dictionary (12th ed. 2024). Webster's Third New International Dictionary—published in the same year as the NVRA's passage—defines "reasonable" as "being in agreement with right thinking or right judgment: not conflicting with reason: not absurd: not ridiculous." Reasonable, Webster's Third New International Dictionary (1993). Interpreting dictionary definitions, the United States Court of Appeals for the Sixth Circuit explained that "a fairly straightforward definition of 'reasonable effort'" is "a serious attempt that

7

is rational and sensible; the attempt need not be perfect, or even optimal, so long as it remains within the bounds of rationality." *Benson*, 136 F.4th at 625.

As it relates to removing deceased voters, the United States Court of Appeals for the Eleventh Circuit has explained that a "jurisdiction's reliance on reliable death records, such as state health department records and the Social Security Death Index, to identify and remove deceased voters constitutes a reasonable effort." *Bellitto*, 935 F.3d at 1205. It clarified that "the state is not required to exhaust all available methods for identifying deceased voters; it need only use reasonably reliable information to identify and remove such voters." *Id.* Similarly, the United States Court of Appeals for the Sixth Circuit reasoned that a "state that actively makes efforts to remove dead registrants based on state and federal death records is engaging in an inherently rational, sensible attempt at maintaining accurate voter registration lists." *Benson*, 136 F.4th at 628. In its view, the State of Michigan's program of regularly updating qualified voter files "based on information from state records and the Social Security Administration" constituted a reasonable effort. *Id.*

**B. The State of Maryland Makes Reasonable Efforts to Remove Ineligible Voters.**

Maryland maintains a statewide voter registration list titled MDVOTERS. Md. Code, Elec. Law § 3-101(a); Md. Code, Elec. Law § 3-101(b)(1); *Judicial Watch, Inc. v. Lamone*, 399 F.Supp.3d 425, 432 (D.Md. 2019). The State Administrator of Elections must "define, maintain, and administer the statewide voter registration list." Md. Code, Elec. Law § 3-101(c)(1). As part of that responsibility, the State Administrator is required to instruct local boards on: (i) processing voter registration applications and name and address changes; (ii) entering voter registration information into the statewide voter registration list; and (iii) removing from the statewide voter registration list information about voters who are no longer eligible to be registered voters. *Id.* at

§ 3-101(c)(3). The State Administrator must also, "subject to relevant federal law and to regulations adopted by the State Board, establish and conduct a program to identify voters who have changed their addresses." *Id.* at § 3-101(c)(4). The State Administrator, "with the local boards," shall also "ensure the currency and accuracy of each individual's voter registration record." *Id.* at § 3-101(c)(2). Voter registration in Maryland is "conducted continuously under the supervision of the State Administrator" and in accordance with "applicable federal law," state law, and "regulations adopted by the State Board." *Id.* at § 3-101(d).

Maryland's registration list, MDVOTERS, is thus maintained centrally, at the State level, by election officials working under the State Administrator of Elections. *Judicial Watch, Inc.*, 399 F.Supp.3d at 432-33. Although "local boards of elections process most voter registration transaction," they do so based on the directives and regulations promulgated by the State Administrator and the State Board of Elections. *Id.* at 432-33. For instance, State level election officials are responsible for providing local boards with the majority of registration information required to create, update, or remove a voter registration record. Md. Code, Elec. Law § 3-504(b)(1). The State Board of Elections also "provides training regarding proper list maintenance procedures, circulates biweekly newsletters containing registration-related information and updates, and publishes guidance documents directing elections officials on how to process records that present certain scenarios." *Judicial Watch, Inc.*, 399 F.Supp.3d at 433.

The State of Maryland has adopted laws to ensure compliance with the NVRA. A registered voter may only be removed from MDVOTERS if the voter (1) requests to be removed, (2) is determined to be ineligible by reason of death, conviction, or incapacity, (3) has moved out of state, or (4) is subject to an administrative challenge and determined to be ineligible. Md. Code, Elec. Law § 3-501. Registered voters may not be removed because they have moved from one

county to another within the State. *Id.* at § 3-101(f)(1).

Maryland has also codified procedures to ensure that ineligible and deceased voters are removed from MDVOTERS. Section 3-504 of the Election Law Article, titled Information from Other Agencies, provides, in relevant part:

> (a)(1)(i) Information from the agencies specified in this paragraph shall be reported to the State Administrator in a format and at times prescribed by the State Board.
>
> (ii) The Maryland Department of Health shall report the names and residence addresses (if known) of all individuals at least 16 years of age reported deceased within the State since the date of the last report.
>
> (iii) Each month, the clerk of the circuit court for each county and the administrative clerk for each District Court shall report the names and addresses of all individuals convicted, in the respective court, of a felony and sentenced to imprisonment with commitment papers.
>
> (iv) The clerks of the circuit court for each county shall report the former and present names and resident addresses (if known) of all individuals whose name have been changed by decree or order of the court since the date of the last report.
>
> (2) The State Administrator shall make arrangements with the clerk of the United States District Court for the District of Maryland to receive reports of names and addresses, if available, of individuals convicted of a felony in that court and sentenced to imprisonment with commitment papers.
>
> (3) The State Administrator shall make arrangements with the United States Social Security Administration or an entity that receives information from the Social Security Administration and is approved by the State Administrator to receive reports of names and addresses, if available, of all Maryland residents at least 16 years of age who are reported deceased.

*Id.* at § 3-504(a). The State Administrator is responsible for transmitting this information "to the appropriate local board." *Id.* at § 3-504(b)(1).

Maryland has similarly codified procedures related to voters who change addresses. If an election official receives "any information that a voter currently registered in the State has moved to a different address within the State, the appropriate election official shall change the voter's

10

record and send the voter a confirmation notice." Md. Code, Elec. Law § 3-502(b). If "it appears from information provided by the postal service" or other specified agencies that a voter has moved to an address outside the State, the voter is sent a forwardable mail notice with a postage-prepaid return card asking the voter to confirm the move and informing the voter of their potential removal from MDVOTERS. *Id.* at § 3-502(c). Such a voter may be removed from MDVOTERS only when they confirm, in writing, that they moved outside the State or when they fail to respond to the notice card *and* fail to vote, or appear to vote, for two consecutive general elections. *Id.* at § 3-502(e). This process closely tracks the safe harbor provision prescribed by the NVRA. 52 U.S.C. § 20507(c)(1).

C. **Plaintiffs Have Failed to Plausibly Plead That the Members of the Montgomery County Board of Elections Violated the NVRA.**

The statutory dichotomy between the State election entities (the State Administrator and the State Board of Elections) and local boards of elections dictates that—as a matter of law—the Montgomery County Board of Elections is not a proper party to this lawsuit. The pertinent statutes make clear that the State Administrator and the State Board of Elections are responsible for establishing policies and procedures that conform with the NVRA. Md. Code, Elec. Law §§ 2-103(b)(7); 3-101(c)(1). Specifically, the Election Law Article provides that the State Administrator is responsible for "instruct[ing] local boards on . . . removing from the statewide voter registration list information about voters who are no longer eligible to be registered voters." Md. Code, Elec. Law § 3-101(c)(3)(iii). Plaintiffs recognize this distinction in their Complaint, as they plead that "federal and state law make Maryland's State Administrator of Elections primarily responsible for list maintenance" and that "[u]ltimate responsibility for coordinating and overseeing all list maintenance activities rests with the Administrator." ECF No. 1 at ¶¶ 78, 81.

Plaintiffs assert in their Complaint that the State Administrator and the State Board of

11

Elections' voter registration and removal programs—as opposed to any programs developed by the Montgomery County Board of Elections— are violative of the NVRA. They have, for instance, pleaded that "Maryland's list maintenance doesn't distinguish between intra-county and inter-county movers." ECF No. 1 at ¶ 104 (emphasis added). They also claim that, around March 2025, "the State Board of Elections directed localities to stop conducting list maintenance using undeliverable mail returned by USPS that bears a yellow return label without any identifying information such as the voter's name." *Id.* at ¶ 109 (emphasis added). Similarly, Plaintiffs plead that the State Board "would not remove a potentially deceased voter's registration unless the death record perfectly matched the registration name in spelling and format." *Id.* at ¶ 115. And, Plaintiffs allege that "Defendants State Board of Elections members and DeMarinis have also recently enacted an official policy to make it more difficult for local elections officials to remove deceased voters by restricting the types of source materials they can use to cancel registrations of deceased voters." *Id.* at ¶ 121 (emphasis added). Pursuant to Maryland law, any changes to these programs must be made by the State Administrator and the State Board of Elections. Md. Code, Elec. Law § 3-101(c)(3)(iii). Accordingly, even assuming arguendo that these programs are deficient (and they are not), the Montgomery County Board of Elections cannot remedy the deficiencies.

A review of Plaintiffs' requested injunctive relief demonstrates the futility of suing the Montgomery County Board of Elections. Plaintiffs request an order "instructing Defendants to develop and implement reasonable and effective list-maintenance programs[.]" *Id.* at ¶ 148. The Montgomery County Board of Elections, however, cannot develop and implement its own programs for list maintenance. Pursuant to the Election Law Article of the Maryland Code, changes to list maintenance procedures must come from the State Administrator, who is charged with instructing the local boards on such programs. Md. Code, Elec. Law § 3-101(c)(3)(iii). Developing

these programs at the State level is also necessary, as MDVOTERS is a "statewide voter registration list." *Id.* at § 3-101(b). As such, the Montgomery County Board of Elections cannot provide the relief that Plaintiffs seek.

Plaintiffs' Complaint is, furthermore, devoid of any allegations that the Montgomery County Board of Elections failed to comply with the registration and removal programs promulgated by the State. *See generally*, ECF No. 1. The Complaint does not contain any allegation that the Montgomery County Board of Elections operated any differently than the other twenty-three (23) local board of elections. Accordingly, because list maintenance programs are developed at the State level and because Plaintiffs have failed to plead that the Montgomery County Board of Elections neglected to adhere to the programs promulgated by the State, the claim against the members of the Montgomery County Board of Elections must be dismissed with prejudice.

## CONCLUSION

For these reasons, and the reasons stated in the State Administrator and the Maryland State Board of Elections' Motion, Defendants David Naimon, Daniel Koroma, Amoretta Hoeber, Keyna Anyiam, Alexander Vincent, Margie Delao, and Lawrence Halloran (collectively "the members of the Montgomery County Board of Elections") respectfully request that this Honorable Court dismiss the claim against them with prejudice.

KARPINSKI, CORNBROOKS & KARP, P.A.

BY:     /s/ Kevin Karpinski
       KEVIN KARPINSKI, #11849
       AIS #9312150114

                                                                                                               /s/ John Karpinski  
JOHN C. KARPINSKI, #30706  
AIS #2112140073  
120 East Baltimore Street  
Suite 1850  
Baltimore, Maryland 21202-1617  
410-727-5000  
Kevin@bkcklaw.com  
Jkarpinski@bkcklaw.com  
*Counsel for Defendants Naimon, Koroma, Hoeber, Anyiam, Vincent, Delao, and Halloran*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 30th day of January 2026, the foregoing was electronically filed with notice to:

Cameron T. Norris
Connor D. Woodfin
Gilbert C. Dickey
Thomas R. McCarthy
1600 Wilson Blvd
Ste 700
Arlington, VA 22209
cam@consovoymccarthy.com
conor@consovoymccarthy.com
gilbert@consovoymccarthy.com
tom@consovoymccarthy.com
*Counsel for Plaintiffs*

Daniel Kobrin
200 Saint Paul Place
20th Floor
Baltimore, MD 21202
dkobrin@oag.state.md.us
*Counsel for the State Administrator of Elections and the Members of the State Board of Elections*

Lorraine Lawrence-Whittaker
6011 University Blvd., Suite 340
Ellicott City, Maryland 21043
llw@lwtrialteam.com
*Counsel for the Members of the Howard County Board of Elections*

                                                      /s/ John Karpniski
                                      Counsel for *Defendants Naimon, Koroma, Hoeber, Anyiam, Vincent, Delao, and Halloran*